UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMARR FOWLER,

                                        Plaintiff,

        -against-                                        1:07-CV-00873 (LEK/DRH)

KINGSTON CITY POLICE DEPARTMENT;
CITY OF KINGSTON, NEW YORK; OFFICER
BENNY REYES; OFFICER ERIC VAN
ALLEN; and OFFICER RICK NEGRON,

                                        Defendants.

_____

**MEMORANDUM-DECISION AND ORDER**

        Plaintiff Jamarr Fowler ("Plaintiff" or "Fowler") filed the instant action pursuant to 42

U.S.C. § 1983 ("Section 1983"), asserting claims for unlawful strip search, false arrest, and

malicious prosecution.  See generally Amended Complaint (Dkt. No. 22).  Presently before the

Court is Plaintiff's Motion for partial summary judgment, filed on November 10, 2008, as well as

Defendants' Motion for summary judgment, filed on October 31, 2008.  Pl.'s Motion (Dkt. No. 46);

Defs.' Motion (Dkt. No. 40).  For the reasons that follow, Plaintiff's Motion is denied, and

Defendants' Motion is granted in part and denied in part.

**I.      BACKGROUND**

        On August 29, 2004, Defendant Benny Reyes ("Reyes"), an officer with the Kingston Police

Department, was on routine patrol in a marked car in the area of Prospect Street and Van Deusen

Street in the City of Kingston, New York ("Kingston" or the "City").  Deposition of Benny Reyes

("Reyes Dep.") at 9-10 (Dkt. No. 46, Ex. 4).  On four or five occasions during Reyes' patrol, he

1

came upon a group of approximately four or five individuals who dispersed when his vehicle approached.  Id. at 10.  At approximately 4:00 a.m., Reyes spotted Fowler and another individual standing in the vicinity of the intersection of Prospect Street and Van Deusen Street in Kingston.  Id. at 12-13.  Reyes called for backup, exited his patrol car, and proceeded to approach and question Fowler.  Id. at 16-18.  Reyes testified that he couldn't remember if Fowler had been loud before Reyes exited his vehicle, and that Reyes didn't see him selling drugs or displaying a weapon.  Id. at 19.

Defendant Officers Rick Negron ("Negron") and Eric Van Allen ("Van Allen") (collectively with Reyes, the "Officers") arrived at the scene after Reyes called the station dispatcher and notified the dispatcher that he was conducting a field interview of two subjects.  Id. at 18.  Fowler testified that Reyes asked him for his identification, and Fowler complied.  Deposition of Jamarr Fowler ("Fowler Dep.") at 36 (Dkt. No. 46, Ex. 6).  Reyes testified that he was "pretty sure" that Fowler supplied Reyes with identification after Reyes so requested.  Reyes Dep. at 24.  Reyes testified that after Negron and Van Allen arrived, Fowler became agitated.  Id.  Officers Negron and Reyes both testified that Fowler became very loud during his interaction with them.  Deposition of Richard Negron ("Negron Dep.") at 9-10 (Dkt. No. 46, Ex. 3); Reyes Dep. at 17.  Reyes and Van Allen observed that Fowler's pants were at least partially unzipped.  Reyes Dep. at 25-26; Deposition of Eric Van Allen ("Van Allen Dep.") at 19 (Dkt. No. 46, Ex. 2).  Van Allen testified that the Officers gave Fowler a verbal command to keep his hands in plain view.  Van Allen Dep. at 19.  Reyes testified that he began a pat down search of Fowler at the scene because Fowler kept reaching into the back of his pants in spite of the instructions to keep his hands in plain view, and Reyes was concerned that Fowler might have had a weapon on him.  Reyes Dep. at 26.

2

Fowler testified that Van Allen kept asking him if he had any guns or drugs on him during the search.  Fowler Dep. at 39.  Van Allen testified that Fowler was defiant both before and during the search.  Van Allen Dep. at 19.  Fowler testified that during the search, Van Allen put gloves on, picked up the back of Fowler's shirt and tried to force his hand down the back of Fowler's pants.  Fowler Dep. at 42, 46.  Van Allen denies trying to force his hands into Fowler's pants.  Van Allen Dep. at 26, 28.  Fowler testified that during the search, he spun around, which caused Van Allen's hand to get caught inside the back of Fowler's jeans and caused Van Allen to trip.  Fowler Dep. at 42-43, 46.  Fowler testified that at this point, the Officers "got physical" with him.  Id. at 43, 46.  Reyes testified that the Officers arrested Fowler for disorderly conduct after he resisted during the search.  Reyes Dep. at 27.  No weapons or contraband were found on Plaintiff's person during the course of the pat down search.  Van Allen Dep. at 20.

Following the arrest, Van Allen and Negron transported Fowler to the Kingston police station.  Negron Dep. at 12; Van Allen Dep. at 18.  Fowler testified that after he was placed in the booking area, Van Allen commanded that Fowler be strip searched.  Fowler Dep. at 50.  Fowler also testified that an unnamed sergeant gave the command to "strip him."  Id. at 51.  Fowler refused to take his clothes off.  Id. at 52.  Fowler testified that after this refusal, the Officers, along with two other unidentified officers, tripped him, threw him to the floor violently, and started to strip him.  Id. at 53-54.  Fowler testified that Officer Van Allen "started digging in [his] anal area[,]" but didn't find anything.  Id. at 54-55.  Fowler denies having drugs on him during the search at the police station or at any point that day.  Id. at 58.

Reyes and Van Allen testified that the Officers took Fowler to the ground after he refused to take off his belt.  Reyes Dep. at 31; Van Allen Dep. at 31.  Reyes further testified that Fowler

3

resisted during the attempted search.  Reyes Dep. at 32.  Negron testified that Fowler became

aggressive and combative when the Officers tried to take his belt.  Negron Dep. at 16, 19.

The Officers testified that during the struggle, they observed a small plastic bag between Fowler's

buttocks, and that Officer Van Allen retrieved the bag.  Negron Dep. at 20-21; Reyes Dep. at 32, 34;

Van Allen Dep. at 32.  The Officers eventually subdued Fowler and handcuffed him.  Reyes Dep. at

36.  Van Allen testified that he conducted a field test of the bag, which was suspected to be cocaine.

Van Allen Dep. at 37.

Fowler was later indicted by an Ulster County Grand Jury on one count each of criminal

possession of a controlled substance in the fourth degree, criminal possession of a controlled

substance in the fifth degree and disorderly conduct.  Am. Compl. ¶17.  Fowler was incarcerated for

over seven months in custody of the Ulster County Sheriff Department.  Id. at 2.  On March 21,

2005, J. Michael Bruhn, County Judge of Ulster County held a suppression hearing in this matter.

Dkt. No. 46, Attach. 10.  Judge Bruhn determined that "the search of this defendant and seizure of

contraband from him was in violation of his Constitutional rights and as such the defendant's

motion to suppress must be and is granted."  Id. at 2.  Accordingly, Judge Bruhn dismissed the

indictment.  Id. at 3.

Fowler initiated this action on August 28, 2007, and filed an Amended Complaint on March

4, 2008.  Dkt. No. 22.  Plaintiff seeks damages for the Officers' alleged (i) unlawful strip search, (ii)

false arrest/ false imprisonment, and (iii) malicious prosecution.  See generally Am. Compl.[1]

---

[1] In addition to the above-captioned Defendants, Plaintiff's Amended Complaint also named
as Defendants various individuals and entities associated with Ulster County and the Ulster County
District Attorney's Office.  However, these Defendants were dismissed per stipulation filed on June
4, 2008 and December 18, 2008.  Dkt. Nos. 33, 59.

Fowler also asserts claims for municipal liability against both Kingston and the Kingston City Police Department.  See id.  Defendants filed their Motion for summary judgment on October 31, 2008.  Dkt. No. 40.  Plaintiff filed a Motion for summary judgment on November 2, 2008, and later amended his Motion on November 10, 2008.  Dkt. No. 46.  Plaintiff moves for summary judgment only as to Defendants' liability, and seeks a trial as to damages.  See id.

## II.    STANDARD OF REVIEW

Summary judgment will be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(C); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).  Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences in favor of the non-moving party, there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 255 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to defeat a motion for summary judgment. Matsushita, 475 U.S. at 586.  The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (citation omitted).  "The non-moving party may not rely on conclusory allegations or unsubstantiated speculation" to show that a genuine issue as to a material fact exists. Scotto v.

5

Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citations omitted).

## III.   DISCUSSION

### A.   Statute of Limitations

Defendants argue that the statute of limitations for Plaintiff's claims is one year, and that Plaintiff's claims must be dismissed because he did not initiate this action until nearly three years after his encounter with Defendants.  However, this argument is without merit.  "[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."  Owens v. Okure, 488 U.S. 235, 249-50 (1989).  In New York, the general statute of limitations for a personal injury action is three years.  N.Y. C.P.L.R. § 214(5).  Therefore, claims brought in federal court pursuant to Section 1983 have a statute of limitations of three years.  See Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002); Lugo v. Senkowski, 114 F. Supp. 2d 111, 113 (N.D.N.Y. 2000) (Kahn, J.).  Accordingly, Plaintiff's claims were timely.

### B.   False Arrest/ False Imprisonment

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV; see also Garenani v. Clinton County, 552 F. Supp. 2d 328, 333 (N.D.N.Y. 2008).  "The unreasonable seizure of a person in the form of a false arrest and imprisonment is violative of the Fourth Amendment and actionable under § 1983."  Garenani, 552 F. Supp. 2d at 333.  "A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law."  Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).  To prove the elements of false arrest under New York law,

a plaintiff must show that "'(1) the defendant intended to confine plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" Garenani, 552 F. Supp. 2d at 333 (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)).

"The existence of probable cause to arrest is a complete defense to a claim of false arrest and imprisonment; in other words, it renders the confinement privileged." Garenani, 552 F. Supp. 2d at 333 (citing Bernard, 25 F.3d at 102 and Weyant, 101 F.3d at 852). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852. "A district court must look to the 'totality of the circumstances' in deciding whether probable cause exists to effect an arrest." Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) (citing Illinois v. Gates, 462 U.S. 213, 233 (1983)).

The defense of qualified immunity entitles public officials to freedom from suit, as a result of the consequences of the performance of their discretionary duties, when "'(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights.'" Martinez v. Simonetti, 202 F.3d 625, 633-34 (2d Cir. 2000) (quoting Weyant, 101 F.3d at 857); see X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999). In considering a qualified immunity defense, courts should not be "'concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene.'" Martinez, 202 F.3d at 634 (quoting Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995)).

"[I]n the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show 'arguable' probable cause." Martinez, 202 F.3d at 634 (citing Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1987)). "An officer's determination is objectively reasonable"– and thus, arguable probable cause is demonstrated– when "'officers of reasonable competence could disagree on whether the probable cause test was met.'" Jenkins, 478 F.3d at 87 (quoting Lennon, 66 F.3d at 423-24). As the Second Circuit explained in Jenkins, "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause . . . If officers of reasonable competence would have to agree that the information possessed by the officer at the time of the arrest did not add up to probable cause, the fact that it came close does not immunize the officer." 478 F.3d at 87.

Plaintiff brings a claim for false arrest/ false imprisonment stemming from his arrest following his interaction with the Officers on August 29, 2004.[2] Plaintiff argues that because the County Judge determined that the search and seizure leading to his arrest were unconstitutional, Defendants should be collaterally estopped from relitigating the issue of probable cause; or in the alternative, that the Defendants lacked probable cause to arrest him. Defendants contend that they had probable cause to arrest Plaintiff, and that therefore his false arrest claim must be dismissed. Defendants also contend that their actions in arresting Plaintiff are shielded by qualified immunity.

_____

[2] Plaintiff's Amended Complaint styles his claim as one for false imprisonment. In Plaintiff's response to Defendants' Motion, Plaintiff analyzes the claims separately. The Court will analyze the claims together, as false arrest has been described as a species of false imprisonment. See Wallace v. Kato, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter."); see also Aretakis v. Durivage, 1:07-CV-1273, 2009 WL 249781, at *7 n.3 (N.D.N.Y. Feb. 3, 2009) (Treece, M.J.) ("The terms false arrest and false imprisonment are always stated in tandem, yet they are not distinct causes of action but rather, false arrest is only a species of false imprisonment. . . . Because they are corollaries of each other, the nomenclature can be, and often are, employed interchangeably.") (internal citation omitted).

Despite the trial court's granting of the suppression motion and dismissal of the indictment, Defendants are not collaterally estopped from litigating the issue of whether they had probable cause to arrest Plaintiff.  A federal court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).  For collateral estoppel to apply in New York, "'[f]irst, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination[.]'"  Juan C. v. Cortines, 89 N.Y.2d 659, 667 (N.Y. 1997) (quoting Kaufman v. Eli Lily and Co., 65 N.Y.2d 449, 455 (N.Y. 1985)).  "Generally, a nonparty to a prior litigation may be collaterally estopped by a determination in that litigation by having a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation[.]"  D'Arata v. New York Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 664 (N.Y. 1990) (citations omitted).

In Jenkins, the Second Circuit addressed a situation substantially similar to the present case.  The plaintiff in Jenkins spent over eight months in prison on robbery and murder charges.  478 F.3d at 83.  After the state trial judge granted the plaintiff's motion to suppress eyewitness identifications, the charges were dismissed upon the prosecutor's motion.  478 F.3d at 82-84.  The plaintiff brought claims for false arrest and malicious prosecution under Section 1983 (as well as various state law claims) against the City of New York and various detectives involved in his arrest.  Id. at 81.  The Second Circuit held that it was error for the district court to have given preclusive effect to the state court's finding that the police did not have probable cause to arrest the plaintiff.

9

Id. at 85-86.  The Second Circuit held that, as the detectives and the municipality were not parties to the plaintiff's prior criminal case and were not in privity with the State of New York (the party that had brought the criminal charges against the plaintiff), the detectives and the municipality could not be precluded from asserting that they had probable cause to arrest the plaintiff.  Id. at 85-86 (citing Brown v. City of New York, 60 N.Y.2d 897, 898 (N.Y. 1983)).

In the case at bar, Fowler's criminal case was brought by the State of New York.  None of the Defendants were parties to the criminal prosecution or are in privity with the State, and thus the Defendants did not have a full and fair opportunity during Fowler's criminal case to litigate the issue of whether they had probable cause to arrest him.  See Jenkins, 478 F.3d at 85-86. Accordingly, Defendants are not precluded from litigating that issue before this Court.

It is undisputed that Defendants: (1) intended to confine Plaintiff by arresting him; (2) Plaintiff was conscious of that confinement; and (3) Plaintiff did not consent to his confinement. Thus, the only issue in dispute is whether Plaintiff's confinement was privileged–in other words, whether Defendants had sufficient probable cause to arrest Plaintiff, or at least arguable probable cause such that Defendants' actions are shielded by qualified immunity.

As outlined above, Plaintiff and Defendants dispute what happened during their interaction on the street that led to Plaintiff's arrest.  Defendants allege that, in light of the information they had at the time, it was reasonable for them to have approached Fowler for the purposes of questioning him.  Defendants also allege that Fowler was evasive and confrontational during the course of their questioning, and contend that they feared for their safety due to Plaintiff's alleged repeated reaching into his pants.  However, Defendant Reyes did not know whether Fowler was a part of the group that had dispersed upon Reyes' approach, and Reyes did not know whether the group was

committing any crime, or conspiring to commit any crime, prior to his attempt to approach them and their subsequent dispersal.  Reyes' approach of Fowler was not in response to a community complaint.  Fowler also provided identification upon the Officers' request.  No weapons or drugs were recovered pursuant to the search at the scene.

The Court concludes that summary judgment for either Plaintiff or Defendants is inappropriate on this claim, as there are material issues of fact as to the circumstances surrounding Plaintiff's arrest.  While Plaintiff has not shown that he is entitled to summary judgment as to liability, he has shown triable issues of fact which preclude granting Defendants' motion.  The Court also concludes that these issues of fact preclude a determination that the Defendants possessed arguable probable cause to arrest Plaintiff, and therefore the Court cannot determine whether Defendants' actions are protected by qualified immunity.  See, e.g., Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994) ("Though immunity ordinarily should be decided by the court . . . that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required[.]") (internal quotations and citations omitted). Accordingly, both Motions for summary judgment as to Plaintiff's false arrest/ false imprisonment claim are denied.

### C.    Strip Search

Law enforcement officers have the authority to conduct a limited, minimally intrusive search upon an individual, at the time of an individual's arrest, in order to ensure the officers' safety.  See Rivera v. United States, 928 F.2d 592, 606 (2d Cir. 1991) (citing United States v. Barlin, 686 F.2d 81, 87 (2d Cir. 1982)).  However, "[t]he Fourth Amendment requires an individualized 'reasonable suspicion that [a misdemeanor] arrestee is concealing weapons or other contraband based on the

11

crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest'

before []he may be lawfully subjected to a strip search." Hartline v. Gallo, 546 F.3d 95, 100 (2d

Cir. 2008) (quoting Weber v. Dell, 804 F.2d 796, 802 (2d Cir. 1986)); see also Weber, 804 F.2d at

802 (a reasonable particularized suspicion is required "for so intrusive and demeaning an

investigative procedure as a strip/body cavity search.") (citations omitted).  As the Second Circuit

has explained:

> "A reasonable suspicion of wrongdoing is something stronger than a mere hunch, but
> something weaker than probable cause. . . . To establish reasonable suspicion, [officers]
> must point to specific objective facts and rational inferences that they are entitled to
> draw from those facts in light of their experience. The standard requires individualized
> suspicion, specifically directed to the person who is targeted for the strip search."

Hartline, 546 F.3d at 100 (quoting Varrone v. Bilotti, 123 F.3d 75, 79 (2d Cir. 1997)).  "[T]he 'test

of reasonableness' requires a 'balancing of the need for the particular search against the invasion of

personal rights that the search entails.'"  Weber, 804 F.2d at 800 (quoting Bell v. Wolfish, 441 U.S.

520, 559 (1979)).  There is no question that the "proscription of strip-searches of misdemeanor

arrestees without reasonable suspicion is clearly enough established" for purposes of qualified

immunity.  Wachtler v. County of Herkimer, 35 F.3d 77, 81 (2d Cir. 1994) (citing Weber, 804 F.2d

at 803-804 and Walsh v. Franco, 849 F.2d 66, 69 (2d Cir. 1988)).

Plaintiff brings an unlawful strip search claim stemming from the search conducted by the

Officers at the Kingston police department following his arrest.  Both parties move for summary

judgment on this claim.  Plaintiff argues that Defendants had no reasonable suspicion to justify the

strip search, as the pat down on the street yielded no indication of weapons or contraband being

carried on his person.  Defendants argue that they should be entitled to qualified immunity because

their action in strip searching Plaintiff was a reasonable response to Plaintiff's disruptive and

threatening behavior at the police station.

It is undisputed that Defendants did not discover any weapons or contraband on Plaintiff as a result of the pat down search on the street. It is also undisputed that Plaintiff was brought to the police station following his arrest for disorderly conduct, which is a violation under New York Law. N.Y. PENAL LAW § 240.20. As Plaintiff was arrested for a violation, Defendants could only strip search him if they had reasonable suspicion to do so. As noted above, the parties dispute the circumstances surrounding the strip search at the police station. Based upon its review of the factual record, the Court concludes that there are issues of fact as to whether the Officers had reasonable suspicion sufficient to warrant a strip search of Plaintiff. Both parties have established sufficient evidence on the record such that a reasonable jury could return a verdict for either Plaintiff or Defendants. These factual disputes preclude the grant of summary judgment for either party, and also preclude a determination that Defendants are entitled to qualified immunity. Accordingly, both Motions for summary judgment must be denied.

### D.    Malicious Prosecution

In order to establish a malicious prosecution claim under Section 1983, a plaintiff must demonstrate "'(1) that the defendant initiated a prosecution against plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with [actual] malice, . . . (4) that the prosecution terminated in plaintiff's favor, . . . [and] (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" Noga v. City of Schenectady Police Officers, 169 F. Supp. 2d 83, 90 (N.D.N.Y. 2001) (quoting Rohman v.

New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000)).[3]

In order to demonstrate a lack of probable cause in the context of malicious prosecution, a plaintiff must demonstrate that defendant "had no 'knowledge of the facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting [the plaintiff] in the manner complained of.'" Noga, 169 F. Supp. 2d at 90 (quoting Cipolla v. County of Rensselaer, 129 F. Supp. 2d 436, 453 (N.D.N.Y. 2001)).  In this context, "[a] presumption of probable cause is created . . . by a grand jury's indictment."  Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003) (citing Colon v. City of New York, 60 N.Y.2d 78, 82 (1983)).  The presumption is rebuttable if the plaintiff can "'establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'"  Boyd, 336 F.3d at 76 (quoting Colon, 60 N.Y.2d at 83).  "Malice" means "'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'"  Noga, 169 F. Supp. 2d at 90 (quoting Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996)).

Plaintiff brings a claim for malicious prosecution arising from the charges brought pursuant to his arrest and the search at the police station.  Both Plaintiff and Defendants move for summary judgment as to this claim.  The only elements in dispute as to this claim are whether Defendants had probable cause to initiate the prosecution and whether they acted with actual malice.  The Court concludes that Defendants' Motion for summary judgment as to the malicious prosecution claim must be granted.  Plaintiff has offered no evidence to rebut the presumption of probable cause to

---

[3] The probable cause inquiry for false arrest claims differs from the injury for malicious prosecution claims.  See, e.g., Boyd v. City of New York, 336 F.3d 72, 75-77 (2d Cir. 2003); Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999).

prosecute created by the grand jury indictment.  Plaintiff points to no evidence upon which a reasonable jury could conclude that "the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'"  Boyd, 336 F.3d at 76 (quoting Colon, 60 N.Y.2d at 83).   Plaintiff has also offered no evidence to establish Defendants' actual malice, and the Court sees no evidence in the record to support a finding that Defendants commenced the criminal proceeding due to an improper motive.  Rather, Plaintiff offers only conclusory allegations as to these elements.  However, "a non-moving party may not rely on conclusory allegations or unsubstantiated speculation" to show that a genuine factual issue exists for trial.  Scotto, 143 F.3d at 114.  Accordingly, Defendants' Motion for summary judgment on the malicious prosecution claim is granted.

### E.    Municipal Liability

Both the Kingston City Police Department and the City have been named as Defendants in this action.  While a municipality may be susceptible to suit under Section 1983, a municipal police department is not.  See Walker v. U.S. Marshals, 08-cv-959 (JG) (AKT), 2009 U.S. Dist. LEXIS 7933, at *5 (E.D.N.Y. Feb. 4, 2009).  "'Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'"  Id. (quoting Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)).  Accordingly, claims asserted under Section 1983 will be dismissed against a municipality's police department.  See Walker, 2009 U.S. Dist. LEXIS 7933, at *5 (internal citation omitted); see also Baker v. Willett, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999).  Thus, Kingston City Police Department is dismissed from this action.  See Ottati v. City of Amsterdam, 5:06-CV-1370, 2008 WL 1744557 at *4 (N.D.N.Y. Apr. 11, 2008) (dismissing the

15

police department *sua sponte* as a defendant because the department "has no legal capacity to sue or

be sued.").

"[A] municipality cannot be held liable solely because it employs a tortfeasor–or, in other

words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell

v. Dep't of Social Servs. of the City of New York, 436 U.S. 658, 691 (1978).  "[T]o hold a city

liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead

and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected

to (3) a denial of a constitutional right."  Batista v. Rodriguez, 702 F.2d 393, 397 (1983); see

Zappala v. Albicelli, 980 F. Supp. 635, 649 (N.D.N.Y. 1997) (in order to state a cause of action for

municipal liability under Section 1983, "a plaintiff must allege that the municipality has adopted a

custom or policy which is the moving force behind the [alleged constitutional violation].").

        In all three causes of action in his Amended Complaint, Plaintiff alleges that the City is

liable for the acts of its employees.  However, Plaintiff has offered no evidence that the individually-

named Defendants were acting pursuant to a policy or custom of the City or of the Kingston Police

Department when they arrested Plaintiff.  Accordingly, the City cannot be held liable for the false

arrest claim against the Officer Defendants.  Nor can the City be held liable for malicious

prosecution, as the claim has been dismissed.  See Carter v. City of Albany, 1:06-CV-461, 2007 WL

913923, at *3 (N.D.N.Y. Mar. 23, 2007) ("If there is no constitutional violation there can be no

municipal liability under § 1983.") (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).

        Plaintiff also claims that the City is liable for the allegedly illegal strip search of Plaintiff,

because the Officers acted pursuant to a strip search policy approved by the Kingston Police

Department.  The Kingston Police Department General Operations Manual Sec. 1000.10 provides

that

> Upon taking an individual into custody, the following procedure will be followed by the arresting officer or officers and the detention facility personnel prior to incarceration in the facility:
>
> 1.      A comprehensive search of the individual will be made in regards to weapons, contraband or any other item or material, including clothing that may be employed by said individual to cause injury or death to his or her person or to the arresting officer or officers or to the detention facility personnel.  Strip searches shall only be conducted when it is absolutely necessary and only when approved by the shift commander on duty at the time of the search. . . .

Dkt. No. 46, Attach. 1.

If a jury were to conclude that the Officers lacked reasonable suspicion to justify a strip search, then there would be an issue of fact as to whether the Officers were acting pursuant to the departmental policy so as to impute liability to the City.  See Maneely v. City of Newburgh, 256 F. Supp. 2d 204, 212-14 (S.D.N.Y. 2003).  Accordingly, Defendants' motion for summary judgment must be denied as to the municipal liability claim against Kingston regarding the strip search of Plaintiff.[4]

IV.    CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Plaintiff's Motion for summary judgment (Dkt. No. 46) is **DENIED;** and

---

[4] In his Amended Complaint, Plaintiff does not explicitly argue that the City of Kingston is liable for the failure to properly train its police officers as to the proper circumstances justifying a strip search.  However, even if Plaintiff's pleading and papers in relation to the pending Motions could be construed to raise a failure to train theory, there is no basis in the record to support such a claim against Kingston.  See Reynolds v. Giuliani, 506 F.3d 183, 190 (2d Cir. 2007) (to prevail under a failure to train theory, Plaintiff must demonstrate that "the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.") (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989)).

it is further

       **ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 40) is **GRANTED**

**in part** and **DENIED in part;** Defendants' Motion is **GRANTED** as to the malicious prosecution

claim; the Motion is **GRANTED** as to the municipal liability claim against Defendant Kingston

City Police Department; the Motion is **GRANTED** as to the municipal liability claim against

Defendant City of Kingston, New York, except insofar as to the strip search claim; the Motion is

otherwise **DENIED**; and it is further

       **ORDERED**, that Kingston City Police Department is **DISMISSED** as a Defendant in this

action; and it is further

       **ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the

parties.

       **IT IS SO ORDERED**.

DATED:     September 22, 2009
               Albany, New York

                    Lawrence E. Kahn
                    U.S. District Judge